AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br><br>HOOSHANG NOORI | DOCKET NO. |
|---|---|
| | MAGISTRATE'S CASE NO.<br>SA 17 - 2 4 5 M |

Complaint for violation of Title 18, United States Code, Section 1028(a)(1).

| NAME OF MAGISTRATE JUDGE<br>HONORABLE JAY C. GANDHI | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|

| DATE OF OFFENSE<br>Dec. 2016 - Feb. 2017 | PLACE OF OFFENSE<br>Orange County and elsewhere | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUL 2 5 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                                DEPUTY

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Beginning in December 2016, and continuing to in or around February 2017, in Orange County, within the Central District of California, and elsewhere, defendant HOOSHANG NOORI, obtained money by means of false and fraudulent pretenses, representations, and promises and caused to be transmitted an interstate wire in violation of Title 18, United States Code, Section 1343. Specifically, on or about February 23, 2017, defendant sent $900,000 from a Chase Bank Account in Laguna Hills, California to an account at Emirates NMB Bank in Dubai, which represented proceeds from a fraudulently obtained loan. The wire went from Laguna Hills through the Chase servers in Delaware and New York before reaching the wire transfer group in Tampa, Florida. From the wire transfer group, the wire was made to Deutsche Bank in New York through the Federal Reserve's Fed Wire System for further credit to Emirates NBD Bank in Dubai.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>WILLIAM M. BONDUANT        /S/ |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>Jay C. Gandhi | DATE<br>July 25, 2017 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA J. WAIER

## AFFIDAVIT

.I, William M. Bondurant, being duly sworn, do hereby depose and state:

## BACKGROUND OF AFFIANT

1.    I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), which is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Orange County Resident Agency, Los Angeles Field Office, Los Angeles, California.  I have been employed with the FBI since September 2004.  Prior to becoming a SA with the FBI, I was employed by Bank of America as a Loan Officer, an Account Manager, and a Vice President of Consumer Credit.  I am currently assigned to the white-collar crime squad, and my duties include the investigation of wire fraud, mail fraud, and securities fraud matters.  I attended the FBI academy and received specialized training related to investigating white collar crime.

3.    I have experience in conducting surveillance, analyzing financial records, interviewing witnesses, drafting affidavits for search warrants and arrest warrants, and in

1

executing arrest and search warrants and other investigative techniques.

## PURPOSE OF AFFIDAVIT

4.   This affidavit is made in support of a criminal complaint against and arrest warrant for HOOSHANG NOORI ("NOORI") for a violation of Title 18, United States Code, Section 1343, Wire Fraud.

5.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

6.   Beginning in or around December 2016, and continuing to in or around February 2017, in Orange County, within the Central District of California, and elsewhere, NOORI knowingly and intentionally committed an offense against the United States, namely, wire fraud, in violation of Title 18, United States Code, Section 1343 by falsely obtaining a $4 million loan and stealing the proceeds.

<u>NOORI FRAUDULENTLY OBTAINED $4,000,000 FROM LOAN OAK FUND, LLC</u>

    A.   NOORI SUBMITTED DOCUMENTS TO OBTAIN MONEY FROM LOAN OAK FUND

    7.   On July 13, 2017, I interviewed S.N. and learned the following:

    a.   S.N. is a Loan Servicing Specialist at Loan Oak Fund, LLC ("LOF"). LOF is a direct portfolio lender that focuses on short term bridge loans secured by first trust deeds on California real estate.

    b.   NOORI is a loan broker who has brought clients to LOF in the past to obtain loans from LOF.

    c.   On December 21, 2016, NOORI faxed an application on behalf of his client, "Mark Gabay," to borrow $3,000,000 against a residence located at 517 N. Elm Drive (the "Elm Property"). NOORI is listed as "Hooshang" from Finance For Americans, Corp. at pacificmor@gmail.com. The purpose of "Gabay's" loan is to "buy new rental propaty [sic]." The loan term was one year and the interest rate was 7.9%. The telephone number provided on the loan request for "Gabay" was (310) 498-6235 (the "(310) Number").

    d.   The loan funded on January 17, 2017, less fees and commissions, for $2,960,090. A wire transfer for the net amount was transmitted online from LOF's office in Los Angeles through its Wells Fargo Bank account to NORTH AMERICAN TITLE

3

COMPANY's ("NATC") Comerica Bank account in El Segundo, California.

      e.   On February 7, 2017, LOF received a call from NOORI. NOORI stated that "Gabay" needed an additional $1 million. The purpose of the entire loan, according to the loan request faxed in by NOORI, was to fund the purchase of a commercial property located at 8326 - 8332 West Blackburn Avenue, Los Angeles, California (the "Blackburn Property") and the $3 million was not enough to purchase the property.

      f.  LOF did not obtain a new loan packet, because the request was so close in time to the first loan. However, a new executive summary was produced, as well as a new "purpose of loan" declaration, and LOF requested and received a copy of the purchase agreement for the purchase of the Blackburn Property.

      g.   LOF executed a Promissory Note for $4,000,000 between LOF and NOBLE INVESTMENTS, LLC ("NOBLE"), which is "Gabay's" company. On February 15, 2017, "Gabay," on behalf of NOBLE, signed the promissory note, which was notarized. This Promissory Note took the place of the first loan. The Promissory Note was secured by a deed of trust on the Elm Property.

      h.   The Promissory Note funded on February 21, 2017. The net amount of the loan was $989,540, which was wire transferred from LOF's Citizens Business Bank located in

4

Pasadena, California to NATC's Comerica bank in El Segundo, California.

       i.    Shortly after the Promissory Note funded, payments started to "bounce." LOF unsuccessfully tried to contact "Gabay" at the (310) number. LOF then located another number for Gabay. When LOF called Gabay, he stated that he did not apply for the loans.

       j.    After the loan payment bounced and LOF was unable to contact Gabay, LOF representatives contacted NOORI for additional contact information for Gabay. NOORI did not have any additional information. NOORI was surprised that Gabay did not make the payments, as Gabay was a real estate professional. NOORI stated that he met Gabay at a nice restaurant, and that Gabay signed the loan request at dinner that night.

      8.    I tried to call the (310) Number and there is a message that it is not in service.

      9.    On July 13, 2017 and July 24, 2017, I interviewed M.R. and learned the following:

      a.    M.R. is a Loan Officer at LOF and worked on both of the Gabay loans.

      b.    Since 2015, M.R. has worked with NOORI as a loan broker and funded nine loans for NOORI's clients. In addition to the funded loans, M.R. has worked with NOORI on 15 loans that did not fund. M.R. has spoken to NOORI at least 20 times in

connection with the Gabay loans. M.R. is positive that she was talking to NOORI as she recognized the caller ID and recognized his voice from the prior deals she had worked with him.

        c.    In connection with the Gabay loans, M.R. spoke with "Gabay" five to ten times prior to the funding of the first Gabay loan. As part of her due diligence, M.R. searched online and located an office number for Gabay rather than contacting Gabay at the number listed on the loan request. When M.R. contacted the office number, she spoke with an assistant and left a message for Gabay. "Gabay" subsequently called back from the number listed on the loan request. On one occasion, M.R. had a question about NOBLE's entity type. "Gabay" called his attorney and the three had a conference call. M.R. could not recall the name of the assistant or the name of the attorney.

        **B.**    **NOORI MISLED THE ESCROW AND DIRECTED THE PROCEEDS TO HIMSELF**

    10.  On July 14, 2017, I interviewed S.A. and learned the following:

        a.    S.A. is an escrow officer at NATC, and has been an escrow officer for nearly 30 years.

        b.    S.A. was the escrow officer on the first Gabay loan. Additionally, S.A. opened the order and disbursed the funds on the second escrow. The second escrow was processed by an escrow officer in a different NATC office.

c.   The first escrow was opened on December 21, 2016,
by LOF through an NATC sales representative.   S.A. dealt with
"Gabay" on the borrower's side of the transaction.   She spoke
with "Gabay" one time over the telephone at the (310) number.
The rest of the communication was via email (gabaym@yahoo.com),
as "Gabay" was difficult to contact by phone.   The one time S.A.
spoke to "Gabay," the discussion was about setting up an
appointment to sign loan documents.

d.   NATC received the loan proceeds on the first
Gabay loan from LOF on January 17, 2017.   On January 18, 2017,
"Gabay" emailed wiring instructions to S.A., with NOORI on the
cc line, directing NATC to wire transfer the loan proceeds to
NOORI's company, Finance for Americans Corp. ("FFA"), doing
business as Pacific Realty, at a Wells Fargo Bank account ending
in 5301, located in Lake Forest, California.   I reviewed the
request and the handwritten instructions appear to be in the
same handwriting as the LOF loan request completed and faxed to
LOF by NOORI.

e.   S.A. informed "Gabay," via email, that NATC would
not wire the funds to an entity other than the entity listed on
the loan documents, NOBLE, Gabay's company.

f.   On January 20, 2017 at 12:39 p.m., "Gabay"
emailed a new set of wiring instructions to S.A. directing NATC
to wire transfer the loan funds to NOBLE's Chase Bank account

ending in 2311.  Loan funds of $2,918,228.35 were disbursed to NOBLE's Chase Bank account that day.

g.    The proceeds from the second escrow were also wire transferred to the same NOBLE Chase Bank account.  NATC received the funds from LOF on February 21, 2017 and disbursed the funds to NOBLE on February 22, 2017.

11.  I reviewed Chase Bank records for the NOBLE account ending in 2311, and I learned the following:

a.    The account was opened on January 20, 2017 – two days after S.A. informed "Gabay" that NATC would not wire the loan proceeds to an entity other than NOBLE.  The account is in the name of NOBLE INVESTMENTS, LLC.

b.    The account opening documents list NOORI as the sole signor on the account.  NOBLE's state of organization is listed as Delaware.  Additionally, NOBLE's address was listed as Trolley Square, Suite 20C, Wilmington, Delaware.  The signature on the signature card appeared to match NOORI's signature on his California driver license.

c.    Bank statements revealed that the account was opened with a $2,000 check from NOORI's company, FFA, on January 20, 2017.  Later that day, NATC wire transferred loan proceeds of $2,918,288 to the account.  On January 23, 2017, NOORI signed a wire request directing $2,650,000 be wire transferred to an Emirates NBD Bank account in the name of FOUR DIRECTIONS

ELECTRONICS LLC located in Dubai, UAE.  NOORI subsequently wrote

a check to an Orange County Mercedes Benz dealership for

$27,895, wrote a check for $179,026 to a hard money lender, and

wrote a check for a mortgage payment for $5,526.

      d.   On February 22, 2017, NATC wired loan proceeds

from the Promissory Note in the amount of $973,647 to NOBLE's

account ending in 2311.  On February 23, 2017, NOORI signed a

wire request directing $900,000 be wire transferred to the same

NBD Bank account in the name of FOUR DIRECTIONS LLC located in

Dubai, UAE.  NOORI then made several financial transactions

unrelated to the purchase of the Blackburn Property, including

purchasing a $105,000 cashier's check in the name of FFA, making

a withdrawal of $11,000, and writing checks made payable to

himself totaling over $15,000.

    12.  I reviewed the Delaware Secretary of State website,

and I learned the following:

      a.   An entity search for "Noble Investments LLC",

revealed that a Noble Investments LLC, with a registered agent

address of Trolley Square, Suite 20C, Wilmington, Delaware, was

registered on January 19, 2017 – the day after S.A. informed

"Gabay" that NATC would not wire the funds to an entity other

than NOBLE.

C.   GABAY DID NOT APPLY FOR LOANS AT LOF OR RECEIVE ANY
     PROCEEDS FROM LOF

13.   On May 5, 2017, Gabay filed a police report with the
Beverly Hills Police Department.  From a review of this report,
I learned the following:

a.   Gabay owns NOBLE, located in West Hollywood,
California.

b.   Between April 11, 2017 and April 18, 2017, LOF
contacted Gabay's office.  LOF advised Gabay that he was in
default on a $4 million title loan that his company, NOBLE, had
taken out against the Elm Property.

c.   Gabay stated that he never took a loan out with
nor had any dealings with LOF.

d.   Gabay's attorney contacted LOF and discovered
that a loan in the amount of $4,000,000 had been taken out and
secured by a deed of trust on the Elm Property on February 15,
2017.

e.   Gabay stated that the signatures on the
promissory note are forged, and he denied ever signing any
documents with LOF.  Gabay provided the Beverly Hills Police
Department with a signature sample.

f.   Gabay stated that there had been no monetary loss
to him, but he was making the report to delay or stop the
foreclosure by LOF of the Elm Property.

D.   THE INTERSTATE WIRE IN FURTHERANCE OF THE SCHEME

14.   On July 21, 2017, I interviewed M.L. and learned the following:

a.   M.L. is a Vice President in Chase Bank's Wire Transfer Department.

b.   The wire transfer sent from Chase Bank account ending in 2311 on February 23, 2017 in the amount of $900,000, was originated from a Chase Bank branch in Laguna Hills, California.  The wire signal went from the branch, through Chase Bank servers in Delaware and New York before reaching the wire transfer group in Tampa, Florida.  From the wire transfer group, the wire transfer was made to Deutsche Bank in New York through the Federal Reserve's Fed Wire system for further credit to Emirates NBD Bank in Dubai. Deutsche Bank then made payment to Emirates NBD Bank for credit to the ultimate beneficiary of the wire transfer, Four Directions Electrics LLC.

/ / /

/ / /

/ / /

## CONCLUSION

15.   Based on the foregoing facts, I submit there is probable cause to believe that HOOSHANG NOORI has committed wire fraud in violation of Title 18, United States Code, Section 1343.

/S/
_____
William M. Bondurant
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me
this ___25___ day of July 2017.

Jay C. Gandhi
_____
UNITED STATES MAGISTRATE JUDGE

12